**William DICKENSON and Connie Dickenson, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**TOWNSIDE T.V. & APPLIANCE, INC., a corporation, Terry Musick and Lynn Marsh, Defendants.**

Civ. A. No. 5:88–0947.[2]

United States District Court, S.D. West Virginia, Beckley Division.

Oct. 31, 1990.

---

Daniel F. Hedges, Appalachian Research & Defense Fund, Inc., Charleston, W. Va., for plaintiffs.

James McKowen, Hunt & Wilson, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HALLANAN, District Judge.

This matter is before the Court via several pending motions. Among such motions are the Defendant's motion for summary judgment as to Count I of the Plaintiffs' amended complaint and the Defendants' motion, with points and authorities, to dismiss all pendent state law claims. Count I of the Plaintiffs' amended complaint alleges that the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"], and is the sole basis for federal jurisdiction. The Defendants' motion for summary judgment as to Count I challenges the applicability of the FDCPA and hence the jurisdiction of this Court.

The Defendants earlier filed a motion to stay the proceedings pending resolution of this jurisdictional issue. By Order entered on January 2, 1990, this Court granted the Defendants' motion to stay "to the extent that this Court [would] resolve the jurisdictional issues as quickly as possible." The Court then directed the parties, however, to work together to allow compliance with the newly entered scheduling Order. Due to the heavy docket of this Court, it has been unable to rule on these motions in a more timely fashion. However, based on the oral argument of counsel regarding these motions, as well as the pleadings filed relative thereto, the Court is now prepared to render its rulings thereon.

## SUMMARY OF FACTS

Defendant Townside T.V. & Appliance [hereinafter "Townside"] is a West Virginia corporation which has its principal business address at 612 South Eisenhower Drive, Beckley, West Virginia. Townside does business as National TV and Appliance at several locations in West Virginia, including the Fountain Shopping Center in Oak Hill, Fayette County, West Virginia, and bills its customers as National TV and Appliance. Defendant Terry Musick is the President of Townside, while Defendant Lynn Marsh is an agent of Townside.

On or about August 1, 1986, the named Plaintiffs, William and Connie Dickenson, went to Townside's Oak Hill location where they entered into "rental agreements" with Townside for a washer and dryer at a weekly rent of $10.95 and $7.95, respectively. The named Plaintiffs contend that when they arrived at the store they had initially intended to purchase the items outright and were informed that the total purchase price of the items was $598.00. The named Plaintiffs contend, however, that at such time they were informed that they could instead enter into a rent-to-own arrangement which could eventually lead to their ownership of the items. While the

Plaintiffs admit that they had expected to pay reasonable interest charges in addition to the total purchase price of the items as part of the rent-to-own arrangement, they allege that they were not informed how many payments they would need to make, the percentage of interest that would be charged, or what their total expenditure would be to achieve ownership in such manner.

The Plaintiffs then contend that although they had paid over $900.00 between August, 1986, and July, 1987, they were informed by an agent of Townside in July, 1987, that they still owed a significant amount before they would own such items. On or about August 23, 1987, an agent of Townside repossessed the appliances after the named Plaintiffs failed or refused to make any additional payments.

The named Plaintiffs initiated this action on July 12, 1988. By Order entered on January 2, 1990, the Court agreed to certify the action as a class action with two subclasses. In general terms, the class action is based on the alleged uniform solicitation practices of the Defendants. More specifically, as to the jurisdiction of this Court, the Plaintiffs allege in their second amended complaint that the Defendants violated the FDCPA. They also allege a plethora of pendent state law claims.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I

The standard for granting summary judgment was discussed by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985). In *Celotex*, the Supreme Court held in part that:

... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since

a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof....

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Of course, all justifiable inferences must be drawn in favor of the nonmoving party, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Plaintiffs allege in Count I that the Defendants have violated the FDCPA in the following particulars:

(a) By the use of an organization or business name other than the true name of the debt collector's business, company, or organization in violation of 15 U.S.C. § 1692e(14).

(b) By collection of fees and charges not authorized by agreement or permitted by law in violation of 15 U.S.C. § 1692f(1).

(c) By taking possession of property when there is no present right to possession in violation of 15 U.S.C. § 1692f(6).

Second Amended Complaint at 5.

Defendants contend that their motion for summary judgment as to Count I should be granted because the Defendants are not "debt collectors" for purposes of the FDCPA and thus that the FDCPA does not

apply.[1] See *Kempf v. Famous Barr Co.*, 676 F.Supp. 937, 938 (E.D.Mo.1988). The Court agrees. 15 U.S.C. § 1692a (1986) provides in pertinent part:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, *the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.* For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditors;

\* \* \* \* \* \*

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(emphasis added). 15 U.S.C. § 1692k provides for civil liability and states in subpart (d) in regards to jurisdiction that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

In regards to the issue of whether Townside is a "debt collector" under the FDCPA, the Defendants contend that Townside consistently both conducts business and bills customers under the name "National TV & Appliance," that the use of such business name is proper, and that such business name is its own name. In essence, it is the contention of the Defendants that Townside is not a creditor which, in the process of collecting its own debts, uses any name other than its own which would indicate that a third person is collecting or attempting to collect such debts. In support of such contention, the Defendants have submitted the affidavit of Defendant Musick which provides in part that:

7. The corporate defendant advertises in local newspapers, and on local TV and Radio, as "National T.V. and Appliance" (sometimes shortened in printed ads to "National TV Appliance").

8. The corporate defendant is in the business of renting and selling appliances such as TVs, VCRs, washers and dryers.

9. The corporate defendant is *not*, and never has been, in the business of collecting debts for other persons.

10. The corporate defendant is *not*, and never has been, in the business of extending credit.[2]

---

1. Initially, it is important to note that in this class action the Dickensons, as class representatives, must fairly represent the members of such class and if they cannot establish the applicability of the FDCPA to their own situation, they can neither maintain a claim based on its alleged violation on their own behalf nor on the behalf of such class. The importance and applicability of this principle is nowhere greater than with the non-consensual, threshold issue of the subject-matter jurisdiction of this Court.

2. The Defendants argue not only that Townside is not a debt collector under the FDCPA but also that it is not a creditor. There is no contention in this case that the principal purpose of Townside's business is the collection of any debts or that it regularly collects or attempts to collect, directly or indirectly, debts owed or due or

11. The corporate defendant is *not*, and never has been, in the business of making loans.

12. The store sign at the Oak Hill Shopping Center store reads "National T.V. and Appliance."

13. On August 2, 1986, and at all times subsequent to that date, the store sign at the Oak Hill Shopping Center store has read "National T.V. and Appliance."

14. The rental agreement for a washer signed by "Eddie Dickenson" on August 1, 1986 was captioned "National Appliance and T.V." [3]

\*  \*  \*  \*  \*  \*

18. The rental agreement for a dryer signed by "Eddie Dickenson" on August 1, 1986 was captioned "National Appliance and T.V."

\*  \*  \*  \*  \*  \*

22. When the plaintiffs fell behind in their washer rental, a termination notice bearing a "National Appliance and T.V." logo was mailed to them.

\*  \*  \*  \*  \*  \*

24. When the plaintiffs fell behind in their dryer rental, a termination notice bearing a "National Appliance and T.V." logo was mailed to them.

Affidavit of Terry Musick in Support of Defendants' Motions for Summary Judgment at 2–3 [hereinafter "Musick Affidavit"].

The Defendants have also attached numerous copies, attested to by Terry Musick as true and correct, to the Musick Affidavit. These copies include the following: (1) West Virginia Certificate of Incorporation for Townside T.V. & Appliance, Inc. dated February 24, 1988; (2) West Virginia Business License for Townside TV & Appliance, DBA National TV & Appliance, at its Oak Hill location for the year beginning July 1, 1988, and ending June 30, 1989; (3) Oak Hill City Business License for National Appliance & TV beginning on December 16, 1988, and ending on June 30, 1989; (4) various printed advertisements for National TV Appliance throughout the years 1986–88; and (5) the above referenced rental agreements and termination notices between National Appliance & TV and Eddie Dickenson.

The above evidence indicates that Townside has consistently conducted business with the Plaintiffs as "National T.V. and Appliance," and the affidavit of Plaintiff William Dickenson submitted in opposition to the Defendants' motions for summary judgment tends to corroborate rather than contradict this fact.[4] In such affidavit,

asserted to be owed or due another. Thus, under the facts of this case, the only basis upon which Townside could be held to be a debt collector and hence potentially liable under the Act would be if it was a creditor which attempted to collect its own debts using a name other than its own which would indicate that a third party was involved in the collection of such debts. 15 U.S.C. § 1692a(4) defines the term "creditor" for the purposes of the FDCPA. However, because the Court finds that Townside, even assuming it was a creditor under the FDCPA, did not attempt to collect its own debts using a name other than its own which would indicate the involvement of a third party in such collection, the Court needs not conclusively determine whether Townside was a "creditor" for the purposes of the FDCPA.

**3.** While the store sign at Townside's Oak Hill location reads "National TV and Appliance," both the rental agreements and the termination notices contain captions reading "National Appliance and TV." The Court agrees with the Defendants, however, that such an obvious transposition of terms is unlikely to confuse

anyone or create an impression that a third party is involved. Additionally, Plaintiff William Dickenson's own affidavit, which will be discussed infra, indicates that he was not confused as to the fact that he was dealing with the same entity at all times.

**4.** It appears that throughout most of this litigation, the Plaintiffs have admitted that Townside consistently transacted its business with them as National T.V. & Appliance. See Memorandum in Opposition to Defendants' Motions for Summary Judgment at 6. It was only until after the Defendants filed a specific motion for partial summary judgment regarding alleged violations of 15 U.S.C. § 1692e(14) that the Plaintiffs contended that such issue remains an outstanding issue of material fact. See Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Regarding Alleged Violations of 15 U.S.C. § 1692e(14) at 2.

In either event, however, the Plaintiffs have simply failed to present any evidence which would support a finding of such an inconsistency in this case. In fact the only evidence

Plaintiff William Dickenson states in pertinent part:

2. On August 1, 1986, my wife Connie Dickenson and I went to a store operating in Oak Hill owned by defendant Townside T.V. and Appliance in order to purchase a washer and dryer.

\* \* \* \* \* \*

8. My wife traveled to Oak Hill to the National T.V. and Appliance store every week to pay the required weekly payment in cash until over $900.00 had been paid. After these amounts of payments we were told by the defendant Terry Musick that we still owed 38 more weeks of weekly payments and that we had to pay double the cost of the washer and dryer before we could own it.

9. In mid-August, 1987, a representative from National T.V. and Appliance threatened to forcibly remove the washer and dryer from our home. He left only when we refused to grant him access to our home.

10. Later, on August 23, 1987, the washer and dryer were repossessed by a second representative from National T.V. and Appliance who threatened us with arrest and fraud if we did not turn over the appliances. My wife and I never had received any written notification from defendants, before or after repossession, that we had to return the appliances.[5]

Affidavit of William Dickenson in Opposition to Defendants' Motions for Summary Judgment at 1–3.

In light of such evidence, it appears to the Court that the sole remaining dispute in regards to this summary judgment motion is the legal issue of whether a creditor which consistently transacts business with a party in a name other than that in which it is incorporated must attempt to collect its debts from such party using its incorporated name.[6] Slightly rephrased, are creditors

---

presented in this regard is the deposition of Defendant Musick taken on May 25, 1989, in which he admitted that Townside had initially for some period after its incorporation transacted business with the public as "Townside TV and Appliance, Incorporated." While such statement alone may have supported the Plaintiffs' contention, Defendant Musick then in the same deposition, after constant urging by counsel for the Plaintiffs, estimated that such name change occurred approximately five (5) years earlier. Such estimation places Townside's initial usage of the name "National T.V. & Appliance" on or about May 25, 1984, more than two (2) years before the named Plaintiffs entered into their rental agreement with Townside. The Plaintiffs have offered no other evidence in contradiction of such estimation.

5. It thus appears that a genuine issue of material fact may exist as to whether the named Plaintiffs actually received any termination notices since these notices indicated that the they should either pay their past-due rent or return the property. Plaintiffs, however, elsewhere appear to contradict the statement that the Dickensons never received these termination notices for they have submitted copies of them in support of their claim that the Defendants have consistently dealt with them as "National TV & Appliance" rather than "Townside TV & Appliance" in attempting to collect the rental payments. Memorandum in Opposition to Defendants' Motions for Summary Judgment at 7, Exhibits B and C.

In any event, this statement does not create a genuine issue of material fact as to whether Townside consistently dealt with the Plaintiffs as National T.V. and Appliance. To the contrary, Mr. Dickenson's statements when viewed in toto support the fact that Townside consistently dealt with the named Plaintiffs as National T.V. and Appliance, and that the named Plaintiffs understood at all times that they were dealing with the same entity.

6. Plaintiffs cite Kempf v. Famous Barr Company, 676 F.Supp. 937 (E.D.Mo.1988), and Phillips v. Periodical Publishers Service, 369 S.E.2d 154 (S.C.App.1988), in support of their contention that the Defendants are "debt collectors" under the FDCPA due to their attempt to collect Townside's debts under the name National TV & Appliance even though the Defendants had consistently dealt with the Plaintiffs under such name.

Obviously, such decisions are not binding precedents on this Court. Additionally, however, the Court finds both Kempf and Phillips to be factually distinguishable from the case at bar. In Kempf, the federal district court simply held that summary judgment was inappropriate where a genuine issue of material fact existed as to whether an employee of the defendant creditor had misrepresented her identity and denied being associated with the defendant creditor while attempting to collect its debt from the plaintiff. While in Phillips, the South Carolina Court of Appeals held that the defendant creditor was a "debt collector" under the FDCPA due to its use of the name "National Collection Agency" on envelopes sent to the Plaintiff for the purpose of collecting its debt, even though the letters inside the envelopes indicated that "National Collection Agency" was a division of the defendant creditor.

required to collect their own debts using only their name of incorporation, regardless of whether they previously dealt with their debtors under a different name upon which they transact business; or may they collect their debts using such other name as long as they have consistently dealt with their debtors under such other name so as not to mislead their debtors as to whom is attempting to collect such debts?

In respect to this issue, the Plaintiffs respond that "[w]hile it may be legal for creditor Townside TV & Appliance to use another name for selling and leasing its products, the FDCPA requires Townside to collect its debts in its own name. Its failure to do so not only subjects it to the Act's guidelines as a 'debt collector' under § 1692a(6), but constitutes an unpermitted 'false and misleading representation,' under § 1692e(14)." Memorandum in Opposition to Defendants' Motions for Summary Judgment at 9.

■ When examined in this light, a corollary question arises: what constitutes a creditor's own name? Nowhere does the FDCPA define a creditor's "own name" as being only its name of incorporation. And, even if we assume that a creditor's "own name" is generally that name under which it is incorporated, it must be remembered that the FDCPA extends the term "debt collector" not to a "creditor who, in the process of collecting his own debts, uses any name other than his own," but to a "creditor who, in the process of collecting his own debts, uses any name other than his own *which would indicate that a third person is collecting or attempting to collect such debts.*" 15 U.S.C. § 1692a(6) (emphasis added). This language of the statute, along with its legislative history and the commentary of the Federal Trade Commission [hereinafter "FTC"], leads this Court to conclude that a creditor may use any established name under which it is

known, to collect its debts from a particular debtor as long it has consistently dealt with such debtor since the beginning of the credit relationship at issue under such name.[7]

In its Commentary on the FDCPA, which superseded all previously issued staff interpretations of the Act, the FTC noted:

> 3. *Application of definition to creditor using another name.* Creditors are generally excluded from the definition of "debt collector" to the extent that they collect their own debts in their own name. However, the term specifically applies to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is" involved in the collection.
>
> A creditor is a debt collector for the purposes of this Act if:
>
> —He uses a name other than his own to collect his debts, including a fictitious name.
>
> \*    \*    \*    \*    \*    \*
>
> *Relation to other sections.* A creditor who is covered by the FDCPA because he uses a "name other than his own" also may violate section 807(14) [§ 1692e(14)], which prohibits using a false business name....
>
> 4. *Specific exemptions from definition of debt collector.*
>
> (a) *Creditor employees.* Section 803(6)(A) [§ 1692a(6)(A)] provides that "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor".

53 Fed.Reg. 50097, 50102 (1988). The FTC then went on to state:

> Section 807(14) [15 U.S.C. § 1692e(14)] prohibits the "use of any business, company, or organization name other than the (collector's) true name."

---

**7.** There may of course be situations where a creditor undergoes a permissible name change during the course of a credit relationship. It appears to this Court that such a creditor would not per se fall within the realm of the FDCPA when attempting to collect its debts under its new name as long as it can establish that it had informed the debtor at issue of its name change and thus that the debtor understood that he/she was still dealing with the same entity.

1. *Permissible business name.* A debt collector may use a name that doesn't misrepresent his identity or deceive the consumer. Thus, a collector may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate this subsection if it consistently uses the same name when dealing with a particular consumer.

2. *Creditor misrepresentation of identity.* A creditor may not use any name that would falsely imply that a third party is involved in the collection....

\* \* \* \* \* \*

3. *All collection activities covered.* A debt collection business must use its real business name, commonly-used name, or acronym in both written and oral communications.

4. *Relation to other sections.* If a creditor uses a false business name, he both loses his exemption from the FDCPA's definition of "debt collector" (section 803(6)[, 15 U.S.C. § 1692a(6)]) and violates this provision....

Id. at 50107. As noted by the Defendants, the FTC's earlier proposal for a Commentary on the FDCPA contained language identical to that set forth above. See 51 Fed. Reg. 8019, 8022, 8027 (1986).

Here, as already noted, there are no material facts which would dispute that Townside has consistently dealt with the Plaintiffs as National TV & Appliance. A name under which it normally transacts business, not a false business name, fictitious or otherwise. Additionally, Townside did not after it had begun its credit relationship with the Plaintiffs as National TV & Appliance attempt to use another name which would falsely imply that a third party was involved in the collection of its debts. At all times, the Plaintiffs understood that they were dealing with National TV & Ap-

pliance. The importance of this consistency is apparent when examining the purposes for which the FDCPA was created.

The Senate Report on the FDCPA in addressing the "Need for this Legislation," provided in pertinent part that:

The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

\* \* \* \* \* \*

Hearings before the Consumer Affairs Subcommittee revealed that independent debt collectors are the prime source of egregious collection practices. While unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial. Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them. Collection agencies generally operate on a 50–percent commission, and this has too often created the incentive to collect by any means.

S.Rep. No. 382, 95th Cong., 1st Sess. 2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696.

Similar concerns were expressed in the United States House of Representatives during the debates leading up to the passage of its proposed bill, H.R. 5294. According to Representative Annunzio, Chairman, Subcommittee on Consumer Affairs, House Committee on Banking, Finance and Urban Affairs:

There are two areas of controversy with respect to this bill. First, whether the bill's coverage should be extended to cover credit grantors collecting their own debts.

Legislation almost invariably involves some form of classification in which a law affects some persons, and not others. And, in this case, there are good reasons for limiting the scope of the legislation to independent debt collectors. Only two-thirds of the States that do have debt collection laws do not cover creditors. Independent debt collectors compose an industry separate from creditors. Debt collectors' business is the collection of debts. Unlike creditors, they do not sell any product or service to consumers. Debt collectors do not actually compete with creditors because creditors first attempt to collect their own 30–day overdue accounts. On the other hand, according to industry testimony, debt collectors usually work on accounts that are at least 6 months overdue. Accounts are generally turned over to collection agencies only after a creditor has tried and been unsuccessful in collecting on his own. Therefore, these accounts are usually difficult to collect and are more likely to result in the use of harsh collection tactics.

Also, a company which is not in the debt collection business will be concerned with maintaining the goodwill of its customers and, therefore, is less likely to chance angering them by employing harassing collection techniques. Creditors, unlike debt collectors, are usually larger and more stable. Therefore, if a Federal agency, such as the Federal Trade Commission takes action against a major creditor, it usually has a deterrent effect throughout the entire industry. This is not the case with the debt collection industry.

123 Cong.Rec. 10,242 (1977).

Just as the plain language of the Act would indicate, it thus appears that the primary target of the FDCPA is independent debt collectors. The Senate Report confirms this conclusion in its discussion of the scope of the Act which provides in pertinent part that:

The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business....

The term debt collector is not intended to include the following: "in house" collectors for creditors so long as they use the creditor's true business name when collecting; ...

S.Rep. No. 382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1697–98.

Congress thus recognized that independent debt collectors, by the very nature of their business, are not subject to the same internal restraints against using harassing techniques as are creditors who are interested in promoting and maintaining their goodwill with their customers and the public in general. The legislative history as well as the plain language of the Act also, however, indicates that Congress was not short-sighted to the many deceptive tactics which could be utilized by creditors themselves for the purposes of debt collection and realized that unscrupulous creditors could attempt to short-circuit their own internal restraints by misleading debtors into believing that third parties, rather than the creditors themselves, were involved in the debt collection and any harassment subsequently employed.

One particular deceptive technique noted in the Senate Report is that of "flat-rating."

Another common collection abuse is known colloquially as "flat-rating." A

"flat-rater" is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters.

This bill prohibits the practice of flat-rating because of its inherently deceptive nature. . . .

Id. at 5, 1699.

Because of its recognition of the various deceptive devices available to creditors for the purpose of misleading debtors into believing that a third party debt collector is involved in the collection of their debts, and thus allowing creditors to use harassing collection techniques with impunity, Congress included creditors who, in the process of collecting their own debts, use any name other than their own which would indicate that a third person is collecting or attempting to collect such debts within the FDCPA's definition of "debt collector." Under the facts of this case, however, the Court does not believe that the Defendants are guilty of using any such deceptive practices.

As already found, Townside and its agents consistently transacted business with the Plaintiffs as National TV & Appliance. Therefore, any goodwill created on Townside's behalf due to its selling and rental of appliances was generated while Townside conducted business as National TV & Appliance and thus, correspondingly, any such goodwill could have been destroyed when and if Townside acting as National TV & Appliance used improper collection techniques. Townside and its agents, however, did not deceptively attempt to protect its goodwill by collecting its debts using a name other than its own which would indicate the involvement of a third party, rather it attempted to collect

its rental payments using the same name under which it had always dealt with the Plaintiffs—"National TV & Appliance."

The solicitation practices and leasing arrangements of Townside may or may not violate West Virginia law, however, under the facts of this case, this Court cannot conclude that Townside and its agents are "debt collectors" for the purposes of the FDCPA. The Court agrees with the Defendants' contention that "[u]nder any reasonable interpretation of this statute's language and legislative history, the term 'debt collector' cannot possibly apply to a company merely because it uses a business name to do business (*and the same name to collect debts*). If that were the case, then most of the business entities in this country would violate the Fair Debt Collection Practices Act every time they reminded a customer that a payment was due. Surely, such an absurd result was not intended by Congress." Memorandum in Support of Motion for Summary Judgment as to Count I of Plaintiffs' Amended Complaint at 5–6 (emphasis added).

Accordingly, it is hereby ORDERED that the Defendants' motion for summary judgment as to Count I of Plaintiffs' amended complaint is GRANTED.

### DEFENDANTS' MOTION, WITH POINTS AND AUTHORITIES, TO DISMISS ALL PENDENT STATE CLAIMS

As noted above, the Defendants have also filed a motion to dismiss all pendent state law claims should this Court determine it lacks federal question jruisdiction. In regards to pendent state law claims, the United States Supreme Court has noted that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). See *Ottensmeyer v. Chesapeake & Potomac Telephone Co.*, 756 F.2d 986, 994 n. 14 (4th Cir.1985); *National Market Reports, Inc.*

*v. Brown,* 443 F.Supp. 1301, 1306 (S.D.W.Va.1978).

██ The Plaintiffs have not argued against the propriety of dismissing their state law claims should this Court determine that it lacks federal question jurisdiction, but rather have argued that this Court has such jurisdiction. In light of this Court's contrary holding, it is accordingly ORDERED that the Defendants' motion to dismiss all pendent state law claims is GRANTED and the Plaintiffs' pendent state law claims are DISMISSED without prejudice.[8]

It appearing that all matters herein are concluded, it is further ORDERED that this action be DISMISSED from the docket of this Court.

IT IS SO ORDERED.

---

**8.** On October 9, 1990, the parties submitted a joint motion to approve settlement. As part of such settlement, the Defendants agreed to withdraw their motions for summary judgment, including that as to Count I of Plaintiffs' amended complaint. Such proposed settlement, however, would not reach a complete settlement of this matter without requiring further action by this Court.

More specifically, such settlement would result in the dismissal of all of Plaintiffs' claims, with the exception of Count III, for a specified sum. However, as to Count III, the parties contend that such count raises a question of state law of first impression and request that this Court certify such question to the West Virginia Supreme Court of Appeals pursuant to W.Va. § 51–1A–1 et seq. Should the highest court of West Virginia accept such certification, this Court would then dependent on the result reached either award a further agreed-upon sum to the Plaintiffs or else dismiss the matter. There, of course, also remains the possibility that the West Virginia Supreme Court of Appeals would refuse such certification, and this Court would be left to decide the issue based on its informed "prediction" of how that Court would have ruled had it accepted such certification.

Because this Court has determined that it lacks federal question jurisdiction and that the proper course is therefore to also dismiss the pendent state law claims, it lacks power to take any further action in this matter including that of certification. The fact that the Defendants have agreed to dismiss their motions for summary judgment, including that as to Count I, is irrelevant. The subject-matter jurisdiction of this Court cannot be consented to by the parties, but rather is a threshold issue which must be raised by the Court, sua sponte, should it perceive a defect. *Burgess v. Charlottesville Savings and Loan Ass'n,* 477 F.2d 40, 43 (4th Cir. 1973), citing *McCorkle v. Pennsylvania Banking and Trust Co.,* 459 F.2d 243, 244 n. 1 (4th Cir. 1972); *Cook v. Georgetown Steel Corp.,* 770 F.2d 1272, 1274 (4th Cir.1985).

While the parties should certainly be commended for attempting to settle this matter amicably, this Court simply lacks the power to act as they request.