**Karen MAGUIRE, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

**v.**

**CITICORP RETAIL SERVICES, INC., Defendant–Appellee.**

**Docket No. 97–7755.**

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1998.

Decided July 1, 1998.

Daniel A. Edelman (Rick D. Young, Edelman & Combs, Chicago, IL, Joanne S. Faulkner, New Haven, CT on the brief), for Plaintiff–Appellant.

Christopher R. Lipsett (Kara M. Stein, Wilmer, Cutler & Pickering, Washington, DC, Jonathan B. Orleans, Zeldes, Needle & Cooper, Bridgeport, CT on the brief), for Defendant–Appellee.

Before: WALKER, LEVAL, Circuit Judges, WEINSTEIN, District Judge*.

JOHN M. WALKER, Jr. Circuit Judge:

Plaintiff-appellant Karen Maguire appeals from a judgment of the United States District Court for the District of Connecticut (Alan H. Nevas, *District Judge*) granting defendant Citicorp Retail Service's ("Citicorp") motion for summary judgment and dismissing Maguire's complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110a *et seq.* ("CUTPA"), and denying plaintiff's motion for partial summary judgment on the issue of liability.

## BACKGROUND

The following facts are undisputed. Citicorp operates a private credit card program for "Bradlees," a chain of retail stores. Un-

---

*\* The Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.*

der this credit card program, Bradlees' customers purchase goods on their Bradlees credit cards; Citicorp then acquires the customers' obligations to pay and bears the credit risk in the event that customers do not pay their accounts.

Customers receive monthly statements of their accounts from Citicorp. The front of the statement bears Bradlees' address and logo and gives information about the account including the date and description of transactions and the account balance. The statement also directs customers to make checks payable to Bradlees. The back of the statement contains a summary of billing rights and directs customers with questions about their bill or in need of information about a transaction to write to the Bradlees address located on the front of the bill. The back of the statement also contains information about special rules for credit card purchases and finance charge and other payment information. Included on the back is a statement that "Citicorp Retail Services, Inc., Creditor, and its affiliates, successors, or assigns keep records on your purchases, prepare bills, collect payments and handle billing disputes for us." Finally, the billing statement directs customers to send inquiries to Bradlees and to notify Bradlees of any change of address by writing to them at P.O. Box 2050 Huntington Station, NY.

Maguire, a Bradlees credit card holder, fell behind in payment on her Bradlees account. She received a series of "dunning" letters from Citicorp, including one letter from M.I. Moir, Citicorp's outside attorney, written on behalf of "Citicorp Retail Services, Inc.," demanding that she pay the overdue amount on her Bradlees account.

Subsequently, Maguire received the letter from Debtor Assistance dated October 18, 1994 that is the sole focus of this appeal. The letter stated the following:

DEBTOR ASSISTANCE
AGENCY CONTROL UNIT
245 OLD COUNTRY ROAD
MELVILLE, N.Y. 11747

KAREN C. MAGUIRE
213 EXCHANGE STREET
NEW HAVEN, CT 06513
Re: Bradlees Acct. No.: 187061108713
Dear KAREN C. MAGUIRE

Are you aware that your Bradlees account has recently charged off? Having a charged off account means:

1. Account will be reported as a charge off delinquent account and will remain on your personal credit report for seven years.

2. Finance charges have been stopped.

3. Account will be reported to a collection agency if payment is not received within thirty days.

The Debtor Assistance unit of CRS would like to offer you the opportunity to set up manageable payment arrangements on your balance of $ 1,132.51.

1. You may pay 80% of your balance in one payment of $906.01 by 11/4/94 which would consider your account settled.

2. Make monthly payment arrangements of $113.25 by the 4th of the month beginning in November.

I am sure you will be interested in taking this opportunity to set up arrangements today. Contact us at (516) 673–2416 between the hours of 8a.m.–5p.m. Monday thru Thursday if you have any questions.

Please understand, if payment is not received within thirty days, this offer will be withdrawn. We look forward to working with you.

We have enclosed a self addressed envelope for your convenience.

Sincerely,

Jackie Davis, Debtor Assistance Agent

Debtor Assistance is a unit of Citicorp responsible for accounts which have become so delinquent that they have been written off for financial disclosure purposes but have not been assigned to an outside collection agency for contingent fee collection. If an individual's account balance is $25 or greater and there is no notification of fraud, bankruptcy, settlement, full payment or death, Citicorp's computer system will generate the Debtor

Assistance form letter that was received by Maguire. Citicorp bears all costs of transmitting these form letters, including printing and postage. The phone number included in the letter is issued to Citicorp and Citicorp pays all bills in connection with that number.

Maguire did not take up the offer in the Debtor Assistance letter. Instead, she defaulted on her account and ultimately filed for bankruptcy. After emerging from bankruptcy proceedings, Maguire filed the instant action in the district court claiming that the Debtor Assistance letter violates the FDCPA and the CUTPA. On January 6, 1997 Maguire filed a motion for partial summary judgment on the issue of liability under the FDCPA and the CUTPA; Citicorp cross-moved for summary judgment.

The district court denied plaintiff's motion for partial summary judgment, granted Citicorp's motion for summary judgment, and dismissed the complaint. See Maguire v. Citicorp Retail Servs., No. 3:95CV2113 (AHN), 1997 WL 280540 (D.Conn. May 19, 1997). The district court held that Citicorp had not brought itself within the ambit of the FDCPA and that Maguire had failed to demonstrate any injury as required to state a claim under the CUTPA. This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment de novo, Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir.1991), construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We will affirm a district court's decision to grant summary judgment if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This court will not try issues of fact, but will only determine whether there are issues to be tried. See Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 55 (2d Cir.1987).

## I. Fair Debt Collection Practices Act

The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

As a general matter, creditors are not subject to the FDCPA. However, a creditor becomes subject to the FDCPA if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias." Villarreal v. Snow, 1996 WL 473386 at *3 (N.D.Ill. Aug.19, 1996). Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the "name under which it usually transacts business, or a commonly-used acronym," Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50107 (1988), or any name that it has used from the inception of the credit relation, see Dickenson v. Townside T.V. & Appliance, Inc., 770 F.Supp. 1122, 1128 (S.D.W.Va.1990).

Similarly, a creditor's in-house collection division, such as Citicorp's Debtor Assistance, is not considered a debt collector "so long as [it uses] the creditor's true business name when collecting." S.Rep. No. 95–382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1698. An in-house collection unit will be exempt from the provisions of the FDCPA if it collects its own debts in the true name of the creditor or a name under which it has consistently done business. See Kempf v. Famous Barr Co., 676 F.Supp. 937, 938 (E.D.Mo.1988).

Maguire concedes that Citicorp is a creditor, but argues that Citicorp is nonetheless subject to liability under the FDCPA as a debt collector because Citicorp used the name Debtor Assistance, a "name other than its own," when collecting its debt. We agree and we reverse the district court's grant of summary judgment for defendant and remand the case for further proceedings.

The district court concluded that because Debtor Assistance is, in fact, a unit of Citicorp, it was not using an alias, or a name other than its own, and was not liable under the FDCPA. *See Maguire*, 1997 WL 280540, at *5. The district court further held that Citicorp was not attempting to collect its own debt under a third party name because Citicorp and Debtor Assistance "are the same entity." *Id.* We disagree with the district court's analysis. The triggering of the FDCPA does not depend on whether a third party is in fact involved in the collection of a debt, but rather whether a least sophisticated consumer would have the false impression that a third party was collecting the debt.

In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the "least sophisticated consumer" would be deceived by the collection practice. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172 (11th Cir.1985). The letter must be assessed in terms of "the impression likely to be left upon the unsophisticated consumer." *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F.Supp. 693, 695 (E.D.Pa.1986). This objective standard is designed to protect all consumers, "the gullible as well as the shrewd," while at the same time protecting debt collectors from liability for "bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1318–20.

The question we must answer is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the letter at issue was not from Citicorp, but was from an unrelated third party, Debtor Assistance, even though Citicorp and Debtor Assistance are in fact related.

At the summary judgment stage, we can not find as a matter of law that a least sophisticated consumer would have known that the Debtor Assistance letter was from Citicorp. The letter Maguire received bore the letterhead "Debtor Assistance" creating the impression that a third party, Debtor Assistance, was collecting its debts. Citicorp had not consistently used the name Debtor Assistance from the beginning of the credit relationship so that the plaintiff could have known "at all times that [she was] dealing with the same entity." *Dickenson*, 770 F.Supp. at 1127 n. 5 (no FDCPA liability because store used same name from the beginning of the credit relationship). To the contrary, plaintiff had never received correspondence from Debtor Assistance, nor has she ever been contacted by someone from Debtor Assistance. Maguire testified in her deposition that she had "no clue" as to the identity of Debtor Assistance and that she did not understand that the letter she received was from Citicorp.

The prior correspondence between Citicorp and Maguire did not establish, or even suggest, that Citicorp was affiliated with Debtor Assistance. *Cf. Olga Button v. GTE Serv. Corp.*, 1996 WL 943904, 1996 U.S. Dist. LEXIS 16971 (W.D.Mich. Oct. 15, 1996) (relatedness apparent from the course of communications because of stationery used, return address of envelopes, address to which payment was to be returned, and text of correspondence). A consumer would not be aware that Debtor Assistance is a unit of Citicorp from the address on the letter because, although Debtor Assistance actually shares the same address as Citicorp, the monthly billing statements from Bradlees do not disclose Citicorp's address. Moreover, while the phone number listed in the Debtor Assistance letter is issued to Citicorp and Citicorp pays all bills and costs associated with the phone number, the letter does not reveal those facts and a consumer would not be aware that Citicorp operates the phone lines because all phone calls are answered by personnel who identify themselves as employees of Debtor Assistance.

Further, this is not a situation where the relatedness of the two entities would be ap-

parent from the similarity of the creditor's and its affiliate's name. *Cf. Young v. Lehigh Corp.,* No. 80C4376, 1989 WL 117960, at *22 (N.D.Ill.1989) (finding that plaintiff could not have been "duped into believing that Lehigh Corporation was not affiliated with Lehigh Country Club, Inc.").

Citicorp's principal argument is that because the Debtor Assistance letter noted that Debtor Assistance was a "unit of CRS," Maguire must have known that the Debtor Assistance letter was from Citicorp. The FTC Official Staff Commentary excludes a creditor's collection division from the definition of debt collector if the "creditor's correspondence is clearly labeled as being from the 'collection unit of the (creditor's name).'" 53 Fed.Reg. 50097, 50102. Thus, we must decide whether the appearance in the letter of the words "a unit of CRS" is sufficient to make defendant's collection notice in the name of the creditor.

We can not agree with Citicorp that Debtor Assistance was so "clearly labeled" as a unit of Citicorp that, as a matter of law, a consumer must have known that Debtor Assistance was affiliated with Citicorp. We do not exclude the possibility that at trial a fact-finder might conclude that, under the least sophisticated consumer test, a consumer should have known that Debtor Assistance was a unit of Citicorp because in the body of the letter Debtor Assistance said that it was a "unit of CRS" and the back of Bradlees account statements reported, *inter alia,* that Citicorp Retail Services was the creditor who handled Bradlees' accounts.

On the other hand, based on the plain reading of the Debtor Assistance letter, a fact-finder could easily conclude that the letter did not clearly designate Debtor Assistance as a unit of Citicorp because its reference to the acronym "CRS" had not appeared in any prior correspondence from Citicorp or Bradlees. A fact-finder could also find that an unsophisticated consumer would not have been aware that Debtor Assistance was affiliated with Citicorp because the cryptic reference to CRS was buried in the body of the letter's text. Finally, a fact-finder could credit plaintiff's testimony that she did not know she was dealing with Citicorp and thought she was dealing with a third party and reason therefrom that a hypothetical least sophisticated consumer would be similarly deceived.

Citicorp also argues that it is not subject to the FDCPA because its use of the name "Debtor Assistance" in the circumstances of this case does not "indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In particular, Citicorp argues that even a least sophisticated consumer could not find that Debtor Assistance was a third party because the letter stated that "the account will be reported to a collection agency if payment is not received within thirty days."

The foregoing passage supports an inference that, since the account may be reported to a collection agency, Debtor Assistance is not such an agency and may not therefore be a third party. However, we can not conclude as a matter of law that this language precludes an unsophisticated consumer from believing that the account had already been forwarded to a third party. The inference that Debtor Assistance is a third party is at least as strong as the inference to the contrary. The letter is not written on stationery which bears the Citicorp or Bradlees letterhead or logo, and it is signed by someone who is identified as a Debtor Assistance agent and not a Citicorp employee. The third party inference is strengthened by the letter's reference to the account being "charged off," a logical precursor to a referral to a third party.[1]

In sum, we believe that it was error to grant summary judgment to Citicorp on the FDCPA claim. While a fact-finder might find for the defendant, there is considerable evidentiary support for the contrary view that a "least sophisticated consumer" could

---

1. Maguire testified in her deposition that she believed that Debtor Assistance was a third party debt collector or collection agency that would be transferring her account to another debt collector. She stated that, "I thought that they might possibly be a collection agency, and that they were going to turn it over to somebody else who could be legally—who could take legal—further steps, legally."

be misled into believing that the letter had been written by a third party attempting to collect debt and that Citicorp had used a name other than its own toward that end. Accordingly, we vacate the judgment of the district court on the FDCPA claim and remand for further proceedings.

## II. *Connecticut Unfair Trade Practices Act*

Maguire also argues on appeal that the district court erred in granting summary judgment for defendant on the CUTPA claim on the ground that she did not prove "ascertainable loss." We disagree.

In order to state a cause of action under the CUTPA, a plaintiff must demonstrate that she has "suffer[ed] any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b." Conn. Gen.Stat. Ann. § 42–110g(a). Although plaintiffs are not required to prove a specific amount of actual damages to make out a *prima facie* case under the CUTPA, the ascertainable loss requirement is "a threshold barrier" that must be satisfied in order to state a CUTPA claim. *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 815 (1981).

Plaintiff, the party claiming damages, has the burden of proving damages or "ascertainable loss." *See Conaway v. Prestia*, 191 Conn. 484, 464 A.2d 847, 852 (1983). Maguire's complaint does not allege any injury or loss that resulted from receipt of the Debtor Assistance letter. There is no evidence in the record that Maguire paid the debt, acted in reliance on the letter, suffered emotional loss or harm, or responded to the letter in any way. In light of Maguire's failure to prove ascertainable loss or damage, the district court was correct in granting summary judgment for defendant on the CUTPA claim.

Faced with her failure to demonstrate "ascertainable loss" resulting from the Debtor Assistance letter, Maguire claims on appeal that a "plaintiff need not show actual damages, where as in this case, the plaintiff seeks injunctive relief on a class-wide basis." We reject this argument based on the plain language of § 42–110g(a), which requires proof of "ascertainable loss" in all CUTPA actions, and § 42–110g(b), which specifically applies the "ascertainable loss" requirement to class actions. Moreover, the Connecticut Supreme Court has noted that "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or *equitable relief.*" *See Hinchliffe*, 440 A.2d at 815 (emphasis added).

## CONCLUSION

The district court's grant of summary judgment for Citicorp under the FDCPA is vacated and the FDCPA claim is remanded for further proceedings. The district court's grant of summary judgment to Citicorp on the CUTPA claim is affirmed. We leave undisturbed the district court's order denying partial summary judgment for Maguire. Each party shall bear its own costs.