**Leslie Hausner MONTANILE, Plaintiff–Appellant,**

**v.**

**NATIONAL BROADCASTING COMPANY and Rosalyn Weinman Defendants–Appellees.**

No. 02–7867.

United States Court of Appeals, Second Circuit.

Feb. 13, 2003.

Glenn B. Allyn, Law, Offices of Glenn B. Allyn, Valley Cottage, New York, for Appellant.

Charles W. Fournier, National Broadcasting, Company, Inc. (Brande M. Stell-

ings, National Broadcasting Company, Inc.; Howard L. Ganz, Proskauer Rose LLP, on the brief), New York, New York, for Appellee.

PRESENT: JACOBS, POOLER, and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 13th day of February, two thousand and three.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be, and it hereby is, **AFFIRMED.**

Leslie Hausner Montanile appeals from the dismissal of her complaint on summary judgment. Montanile alleges under Title VII and N.Y. Exec. Law § 296, that the National Broadcasting Company, Inc. ("NBC") wrongfully discriminated against her based on her sex, and that NBC wrongfully retaliated against her after she complained of the discrimination.

In July 1997, Rosalyn Weinman, the head of NBC's Broadcast Standards Department, hired Montanile (who was then serving as a temporary employee at NBC) to serve as a temporary assistant while Weinman was on a business trip. When Weinman returned, Montanile accepted Weinman's offer of a permanent position as her executive assistant. Montanile was then 32 years old and had a law degree. The following month, Montanile married. Montanile and Weinman had several discussions in which Montanile mentioned her desire to start a family, including during a January 1999 conversation that included Weinman's mother.

For two years, Weinman gave Montanile raises, bonuses, and exemplary performance evaluations.

Beginning in the Summer of 1998, NBC began restricting overtime work as part of an overall cost-cutting plan. In July 1999, Weinman allegedly told Montanile that she could no longer receive overtime, which had supplemented Montanile's pay by an additional $22,000. Montanile alleges that two others in her department continued to work overtime.

According to Montanile, Weinman informed her in May 1999 that she would not receive a hoped-for promotion, and began helping Montanile find a new job.

In the Spring of 1999, Weinman was appointed head of NBC's East Coast Entertainment, replacing Bridget Potter. Potter's executive secretary, Matthew Levine, was assigned to Weinman, who added all of Potter's duties to her existing responsibilities. Montanile alleged that Levine temporarily took over her desk, assumed all non-clerical responsibilities, and was permitted to work overtime.

On September 13, 1999, Montanile met with Alex McCauley of NBC's employee relations department to complain about Weinman. While McCauley recalls that Montanile's complaints centered on Weinman's alleged practice of assigning personal tasks to her, Montanile claims that she

complained that Weinman had given all of Montanile's significant job responsibilities to a male employee and that the male was allowed to work overtime while Montanile was not.

On September 21, 1999, Montanile had a confrontation with Weinman. Montanile alleged that Weinman fired her during this confrontation.

Montanile alleges that (1) a male absorbed her duties at work and was permitted to receive overtime, and (2) Weinman was motivated to fire Montanile by the belief that Montanile would start a family.

The district court applied the three-part burden shifting framework applicable to discrimination claims, as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court held that Montanile did not establish a *prima facie* case of discrimination, because (1) the shift in duties to Levine and the denial of overtime were "mere changes in working conditions that cause some inconvenience," not adverse employment actions; and (2) circumstances support no inference of discrimination because (a) Montanile "received consistently favorable treatment throughout her employment with NBC, both before and after she mentioned her desire to start a family"; and (b) there was nothing linking the changes in Montanile's work environment and her ineligibility for overtime to either her sex or her desire to start a family. The district court further held that, even if Montanile could establish a *prima facie* showing of discrimination, NBC offered legitimate, non-discriminatory reasons for its actions that rebut the presumption of discriminatory intent, including: (1) Weinman's promotion; and (2) NBC's cost-cutting measures. Finally, the district court ruled that, once the burden shifted back to Montanile, she offered "no meaningful evidence

to demonstrate discriminatory animus or to substantiate any pretext on the part of NBC and Weinman."

On the retaliation claim: the district court concluded that no *prima facie* case was established, because (1) Montanile's September 13 complaint was "[a] simple dispute between an employer and employee about the specific scope of an employee's duties [that] is not related to protected activity under Title VII," and (2) there was no evidence demonstrating that Weinman was aware of the September 13 complaint.

The court also ruled that NBC's explanation for Weinman's discharge was neutral and non-discriminatory. Weinman claimed that Montanile's work performance declined during the Summer of 1999, and that Montanile refused to perform certain assignments in the days just before their September 21 argument. In the district court's view, Montanile did not come forward with sufficient evidence demonstrating that NBC's stated reason for her termination was a mere pretext.

Finally, the court held that the state-law discrimination claims, which share the same standard of proof, likewise failed. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000). With no federal claims remaining, the district court declined to exercise supplemental jurisdiction over Montanile's state-law claims for fraud and fraudulent inducement.

On August 23, 2002, the district court issued an order denying Montanile's Rule 59(e) motion, and wrote an opinion further clarifying the reasoning behind its earlier grant of summary judgment for NBC. The Rule 59(e) motion is not part of this appeal.

This Court reviews the district court's grant of summary judgment *de novo. See Young v. County of Fulton,* 160 F.3d 899,

902 (2d Cir.1998). In doing so, this Court is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ We have reviewed all of Montanile's arguments on appeal and conclude that they are without merit.[1] Two require some further elaboration. First, Montanile contends that "the lower court ... failed to apply the appropriate standard and, in fact, has undertaken to evaluate the evidence in the opposite manner." To the contrary, the district court appropriately scoured the record to find a genuine issue of material fact, and, finding none, it was bound to grant NBC's motion for summary judgment.

■ Second, Montanile asserts that the district court should have analyzed her retaliation claim not only as of September 21, 1999 (the day Montanile claims Weinman fired her) but also as of October 6, 1999 (the day Montanile learned that she was to turn over her employee materials), especially because NBC denied to the EEOC that Montanile was fired on September 21. If the October 6 date were used, Montanile contends that "the employer did at this time know that a complaint regarding a protective [sic] activity was made." We find no error in the district court's use of the September 21 date only, because Montanile insisted that she was fired on that date in her sworn pleadings, the EEOC charge, her deposition, and in her opposition papers to NBC's summary judgment motion.[2]

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED.**

1. We do not adopt each of the district court's subsidiary findings. Because we agree with the district court that Montanile did not satisfy her burden of showing inferences supporting a finding of discrimination, we need not address the district court's further conclusion that Montanile did not incur an adverse employment action. We question, however, the court's holding that a cessation of overtime that regularly added $22,000 to Montanile's base pay and that did not apply equally to all employees in Montanile's department could not be an adverse employment action.

2. Because we agree with the district court that there is no evidence Weinman was aware of the September 13 complaint, Montanile has failed to establish a *prima facie* case of retaliation and we need not reach the district court's alternative holding that the September 13 complaint was not protected activity. We note, however, that on the record before us Montanile's September 13 complaint does appear to constitute protected activity. McCauley's deposition testimony and her handwritten notes from September 13 show that while Montanile did complain primarily that Weinman "[h]ad her work on personal stuff," McCauley also noted that Montanile additionally complained that "Matt [Levine] gets privileges" and "Roz [Weinman] has pattern with other women." This seems to be a sufficient showing that Montanile complained of sex discrimination, and thus engaged in protected activity under Title VII.