In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2030

JOSEPH CATENCAMP,

*Plaintiff-Appellant,*

v.

CENDANT TIMESHARE RESORT
GROUP—CONSUMER FINANCE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-0318(E)—**C.N. Clevert, Jr.**, *Judge.*

ARGUED OCTOBER 20, 2006—DECIDED DECEMBER 14, 2006

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Every "debt collector" must
comply with the Fair Debt Collection Practices Act, 15
U.S.C. §§ 1692-1692*o*. That term includes anyone who
regularly collects debts. See *Heintz v. Jenkins*, 514 U.S.
291 (1995); *Thomas v. Simpson & Cybak*, 392 F.3d 914
(7th Cir. 2004) (en banc). But a "debt collector" is defined
as a third party that assists or acts as an agent for the
creditor; the term does not include the creditor itself.
15 U.S.C. §1692a(6). To this exception for a creditor act-
ing on its own behalf, §1692a(6) attaches a proviso: the
term "debt collector" nonetheless "includes any creditor

who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."

Joseph Catencamp contends in this suit under the FDCPA that his lender used such a ruse and therefore had to comply with the Act. Catencamp purchased from Fairfield Resorts, Inc., a timeshare interest in one of Fairfield's resorts. Shortly after Catencamp signed the contract, Fairfield Resorts assigned his account to Cendant Timeshare Resort Group—Consumer Finance, Inc., though Catencamp did not learn this till later. When he fell behind in payments, he received a dunning letter from "Resort Financial Services" (which small type declared to be "A Division of CTRG—Consumer Finance"). CTRG Consumer Finance is itself not a distinct legal entity; it is a division of Cendant, a fact that the letter did not mention; one reason why the letter does not comply with the Act (if the Act applies in the first place) is that real names were not used. 15 U.S.C. §1692e(14). The letter said that "Fairfield Communities, Inc. has referred your account to us for collection." The letter added that, if Catencamp disputed the amount due, "the validity of this debt will be verified in writing with the creditor and a copy of such verification promptly mailed to you." When a letter *proclaims*, as this one did, that it is coming from someone other than the creditor—the letter identified Fairfield Communities as the creditor and promised to obtain verification from Fairfield on demand—a debtor naturally supposes himself to be in contact with a debt collector. Yet the district court granted summary judgment to Cendant, because the letter came from it—and Cendant is, after all, Catencamp's creditor.

If the communication had been on the letterhead of "Cendant Timeshare Resort Group—Consumer Finance, Inc.", then the district court would have a point. On the

one hand, it would be from the creditor in its own name. On the other, it would falsely identify someone else (Fairfield) as the creditor and promise to verify the debt with Fairfield. That would confuse a reasonable recipient, but the Act's anti-confusion rule applies only to debt collectors, which Cendant is not. Cendant did not, however, communicate with Catencamp in its own name. It used a trade name, Resort Financial Services, that Catencamp had never encountered before, and appended another name, CTRG—Consumer Finance, that also was novel to Catencamp. It is hard to see why recipients should be expected to know that "Resort Financial Services" and "CTRG—Consumer Finance" are the same as "Cendant Timeshare Resort Group—Consumer Finance, Inc." when the word "Cendant" does not appear in the letter and the document loudly proclaims that Fairfield Communities is the creditor.

Maybe a sophisticated person could have guessed that "CTRG" is an acronym for "Cendant Timeshare Resort Group". The Act does not require, however, either sophistication or guesswork. Courts must analyze debt-collection communications from the perspective of unsophisticated recipients. See *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir. 1994). The effect of a potentially misleading acronym is the subject of *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2d Cir. 1998). Citicorp Retail Services, the creditor, sent a dunning letter in the name of "Debtor Assistance, A unit of CRS"; the word "Citicorp" did not appear in the letter. The second circuit held that, because an unsophisticated debtor would think "CRS" to be distinct from "Citicorp," the false-name exception in §1692a(6) applied.

Catencamp's situation likewise is governed by the norm that unsophisticated readers do not see through acronyms when the creditor's full name is missing. Even when that norm does not apply—for some acronyms, such

as AT&T and IBM, are so famous that even an unsophisticated consumer must appreciate the source, see *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004)—a letter from an acronym that is self-proclaimed *not* to be the creditor must be treated as one from a "debt collector." Cendant's letter stated that it was from a debt collector rather than the creditor (identified as Fairfield Communities). Having trumpeted Resort Financial Services as a debt collector, Cendant had to comply with all obligations that the Act places on debt collectors.

Cendant observes that the letter from Resort Financial Services attached a copy of the original contract, showing Fairfield Resorts as the creditor. But how does this help? That certainly does not imply that Resort Financial Services or CTRG was the creditor; it reinforces the point that this dunning letter appeared to be from a third party. Cendant, as the letter's true author, must be treated as a "debt collector" under §1692a(6).

Catencamp had advanced a second claim for relief. He invokes 12 U.S.C. §2605(a), part of the Real Estate Settlement Procedures Act, which provides that anyone who makes a federally related mortgage loan (as Fairfield did) must "disclose to each person who applies for the loan, at the time of the application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." In other words, the lender must reveal (in terms that lay borrowers can understand) whether the note is negotiable. Catencamp maintains that he did not receive this notice, though he then signed negotiable paper (which was indeed transferred to Cendant).

The district court blocked Catencamp from amending his complaint to frame a claim under RESPA, writing that an amendment would be futile because Fairfield notified Catencamp about the loan's transfer to Cendant.

Apparently the district judge misunderstood the nature of this claim, which has nothing to do with notice of transfers after loans have closed. Section 2605(a) deals with notice about *negotiability*, and that notice must be given before a loan closes. The regulations make this pellucid, in case the statute were not enough. See 24 C.F.R. §3500.21. One may doubt that drowning borrowers in oceans of paper (RESPA disclosures can exceed 100 pages) gives them effective notice of *anything*: the verbiage blurs together, and the details are forgotten. Whether short and simple would be preferable to complex and complete is, however, a matter for the legislature. Catencamp is entitled to litigate his claim that Fairfield failed to comply with §2605(a).

REVERSED AND REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*