[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17107

_____

D.C. Docket No. 9:16-cv-80688-WJZ


JOHN PINSON,

Plaintiff - Appellant,

versus

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
a financial institution,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 12, 2019)

Before MARTIN, JILL PRYOR, and JULIE CARNES, Circuit Judges.

MARTIN, Circuit Judge:

After years spent trying to correct what he views as a false entry on his

credit report, John Pinson sued the entity he believed provided the false

information: JPMorgan Chase Bank, N.A ("JPMorgan Chase").  His pro se complaint asserted claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.   On JPMorgan Chase's motion, the District Court dismissed his complaint for failure to state a claim.  Having reviewed Mr. Pinson's complaint, and with the benefit of oral argument, we conclude he has stated three plausible claims for relief under the FCRA.  We therefore reverse in part and remand to the District Court to give Mr. Pinson the chance to prove his FCRA claims.  However, we cannot say Mr. Pinson plausibly stated a claim under the FDCPA.  We therefore affirm the District Court's dismissal of his FDCPA claim.

## I.

John Pinson got a copy of his credit report from TransUnion, a consumer credit reporting agency, in May 2012.[1]  His report showed a past due account with an entity called Chase Home Finance LLC.  But Mr. Pinson says he does not have an account with Chase Home Finance LLC.  Mr. Pinson's explanation is that

---

[1] We take the facts from Mr. Pinson's complaint and accept all well-pleaded allegations as true.  See Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016).

2

JPMorgan Chase, with whom Pinson has a past-due mortgage,[2] used the false name Chase Home Finance when it reported the debt to TransUnion.

In July 2012, Mr. Pinson disputed the entry with both JPMorgan Chase and TransUnion. TransUnion responded a couple of weeks later with a letter saying Chase Home Finance would continue to appear on his credit report. There is no allegation JPMorgan Chase responded.

Mr. Pinson sent another letter to JPMorgan Chase in September 2012, again disputing the Chase Home Finance entry on his report. JPMorgan Chase did not respond. Undaunted, Mr. Pinson sent at least four more such letters to JPMorgan Chase in 2013. So far as the complaint shows, JPMorgan Chase never responded to any of those letters, either.

In April 2014, Mr. Pinson disputed the entry with TransUnion once again. TransUnion responded with another letter saying Chase Home Finance would continue to appear on the report. Mr. Pinson repeated his dispute in yet another letter to TransUnion in June 2014. TransUnion once again replied that the Chase Home Finance entry would continue to appear.

---

[2] Mr. Pinson nowhere alleges JPMorgan Chase held his mortgage, although we are aware of prior litigation regarding a past-due home mortgage Mr. Pinson had with JPMorgan Chase. Pinson v. JP Morgan Chase Bank, N.A., 646 F. App'x 812, 813 (11th Cir. 2016) (per curiam) (unpublished).

All told, Mr. Pinson wrote TransUnion three times and JPMorgan Chase at least six.  Yet the Chase Home Finance entry still appeared on Mr. Pinson's credit report as of May 2015.

Throughout this back-and-forth, Mr. Pinson says JPMorgan Chase failed to investigate the accuracy of the information on his credit report.  He also says JPMorgan Chase requested his credit report from Experian, another credit reporting agency, some twenty times without a proper purpose.

Mr. Pinson sued JPMorgan Chase in April 2016, asserting violations of the FDCPA and the FCRA.[3]  He asserts JPMorgan Chase violated the FDCPA's prohibition on using a name other than a business's true name in connection with the collection of a debt when JPMorgan Chase gave TransUnion the name Chase Home Finance.  See 15 U.S.C. § 1692e(14).  He also claims JPMorgan Chase violated the FCRA by failing to investigate the accuracy of information it provided to TransUnion and by requesting his credit report without a permissible purpose. See id. §§ 1681b(f), 1681s-2(b), 1681o.

On JPMorgan Chase's motion, the District Court dismissed Mr. Pinson's complaint for failure to state a claim on which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Mr. Pinson timely appealed.  The Court appointed Ashwin

---

[3] Mr. Pinson also asserted various state law claims.  He does not press those claims on appeal.

4

Phatak to represent Mr. Pinson on appeal, and he ably discharged his responsibilities.

## II.

We review <u>de novo</u> our subject matter jurisdiction, and we have an independent obligation to ensure jurisdiction exists.  <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 408, 410 (11th Cir. 1999).  We also review <u>de novo</u> the grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  <u>Hunt v. Aimco Props., L.P.</u>, 814 F.3d 1213, 1221 (11th Cir. 2016).  To state a claim, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A complaint is facially plausible where there is enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  We liberally construe <u>pro se</u> pleadings.  <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

## III.

We initially consider whether Mr. Pinson has standing to bring his claims. We conclude he does.

Standing, a limitation on federal subject matter jurisdiction derived from Article III, requires plaintiffs to show they suffered an injury in fact traceable to the defendant's conduct and redressable by a favorable decision. Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1546–47 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)).

Mr. Pinson alleged actual, concrete, and particularized injuries: that he lost time communicating with JPMorgan Chase and TransUnion; that he incurred out-of-pocket expenses trying to correct misinformation on his credit report; and that he was denied access to credit and paid higher car insurance premiums as a result of JPMorgan Chase's conduct. We have held that the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim. See Pedro v. Equifax, Inc., 868 F.3d 1275, 1280 (11th Cir. 2017) ("Pedro also alleged a concrete injury because she alleged that she 'lost time . . . attempting to resolve the credit inaccuracies.'").

In addition, economic harm is a quintessential injury in fact. See Sierra Club v. Morton, 405 U.S. 727, 733, 92 S. Ct. 1361, 1365 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing . . . .").

6

Beyond the out-of-pocket expenses, such as postal expenses, incurred by Mr. Pinson in his repeated communications concerning the information in his credit report, he also alleges economic harm in the form of lost credit opportunities and higher car insurance premiums.  Mr. Pinson says JPMorgan Chase's alleged violations of the FDCPA and FCRA caused this economic harm.  At this stage in Mr. Pinson's case, we accept his allegations as true, and we find them specific enough for us to conclude Mr. Pinson plausibly suffered an injury traceable to JPMorgan Chase's conduct.  See id. at 1336 ("Each element of standing . . . must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." (quotation marks omitted)).  This is particularly true given our liberal construction of Mr. Pinson's pro se complaint.

On top of lost time and money, the harm Mr. Pinson alleges—"the reporting of inaccurate information about [his] credit"—has "a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts."  Pedro, 868 F.3d at 1279–80.  That in itself constitutes a concrete injury.  See id. at 1279; see also Spokeo, 136 S. Ct. at 1549 (noting that, in assessing whether an injury is concrete, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm

that has traditionally been regarded as providing a basis for a lawsuit in English or American courts").

These injuries flowed directly from JPMorgan Chase purportedly providing false information concerning Mr. Pinson's debt to TransUnion and from its repeated requests for Mr. Pinson's credit report. A court could redress Mr. Pinson's harms by giving him relief on his statutory claims. This suffices for standing.

## IV.

JPMorgan Chase urges us to dismiss Mr. Pinson's complaint as a shotgun pleading. We decline to do so. A shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015). The worst examples of shotgun pleadings contain "innumerable pages of rambling irrelevancies," Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam), "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts," Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks omitted and alterations adopted). JPMorgan Chase summons these specters and asks us to

dismiss Mr. Pinson's complaint.  But our review of the complaint reveals this argument is more hyperbole than substance.

It is true that each count of Mr. Pinson's pro se complaint adopts the allegations of all preceding counts.  It is also true that the complaint is perhaps longer than it needs to be.  But it does not contain endless irrelevancies.  And it does what complaints must do: it "give[s] the defendant[] adequate notice of the claims against [it] and the grounds upon which each claim rests."  Weiland, 792 F.3d at 1323.  We have no trouble understanding Mr. Pinson's allegations that JPMorgan Chase violated federal law by providing a false name to TransUnion, failing to investigate the accuracy of the information it provided, and obtaining Mr. Pinson's credit report for an improper purpose.  We've seen no indication that JPMorgan Chase had trouble understanding them either.  This would "explain why [JPMorgan Chase] did not move for a more definite statement" in the District Court.  Id. at 1324.  What's more, both JPMorgan Chase and the District Court understood the claims well enough to address their merits—JPMorgan Chase in a motion to dismiss, and the District Court in an order granting that motion.  And while this circuit's shotgun-pleading rule applies to everyone, we ordinarily give pro se litigants more leeway when it comes to drafting.  See, e.g., Dean v. Barber, 951 F.2d 1210, 1213 (11th Cir. 1992) (explaining this Court would look at the pro se plaintiff's pleadings "with special care" because "[t]his circuit and the Supreme

9

Court have stated that pro se complaints are given more leeway than complaints submitted by litigants represented by lawyers"). We will therefore consider Mr. Pinson's complaint on its merits.

## V.

Assured of our jurisdiction and the sufficiency of Mr. Pinson's complaint, we now examine Mr. Pinson's FDCPA and FCRA claims. We conclude he has stated a plausible claim for relief only as to his FCRA claims. [4]

### A.

The FDCPA makes it unlawful for a "debt collector" to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt collector violates this provision when it uses "any business, company, or organization name other than the true name of the debt collector's business, company, or organization" in connection with the collection of a debt. Id. § 1692e(14).

Mr. Pinson alleges that JPMorgan Chase's use of the name Chase Home Finance on Mr. Pinson's credit report violated the FDCPA. We hold that Mr.

---

[4] Mr. Pinson asserts FDCPA claims in counts 1 and 2 of his complaint. He asserts FCRA claims in counts 3, 8, and 9 of his complaint. Although counts 3, 8, and 9 each allege a violation of different FCRA provision, addressed below, counts 1 and 2 both allege violations of the FDCPA's prohibition on using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Thus, for the purposes of this appeal, we treat counts 1 and 2 as reciting only one set of claims under the FDCPA.

Pinson did not plausibly allege that JPMorgan Chase qualifies as a "debt collector" under § 1692e.[5]

1.

The FDCPA regulates "debt collector[s]," defined as persons who "regularly collect[] or attempt[] to collect" someone else's debts.  15 U.S.C. § 1692a(6).  The FDCPA ordinarily does not apply to creditors trying to collect their own debt.  Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015).  However, there are instances in which creditors collecting their own debt are deemed debt collectors under the statute.  The FDCPA applies to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  We will refer to this as the false-name exception.

The false-name exception has three components: a creditor must (1) use a name other than its own (2) in a way that would indicate a third person is attempting to collect its debt (3) in the process of collecting its own debt.  JPMorgan Chase quite plainly used a name other than its own on Mr. Pinson's

---

[5] In a single footnote, Mr. Pinson also claims he stated violations of 15 U.S.C. § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known . . . to be false," and § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  He has abandoned these claims.  We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief. See Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987).

credit report.  However, we conclude Mr. Pinson's FDCPA claim flounders at the second component of the false-name exception, because JPMorgan Chase's use of the name Chase Home Finance did not indicate that a third person was collecting Mr. Pinson's mortgage.

This circuit has not set a standard for assessing when a name would indicate that a third party was involved in collecting the debt—or, put differently, from whose perspective we should assess whether a name would indicate a third party's involvement.  We now join the Second and Seventh Circuits and hold that the false-name exception applies when the "least sophisticated consumer" would believe a third party was involved in collecting a debt.[6]  See Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc., 471 F.3d 780, 782 (7th Cir. 2006); Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 236 (2d Cir. 1998).  This standard has a long legacy in consumer protection law.  Cf. FTC v. Standard Educ. Soc'y, 302 U.S. 112, 116, 58 S. Ct. 113, 115 (1937) ("The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.").  We already use the least sophisticated consumer standard to interpret other substantive provisions of the FDCPA.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1173–75 (11th Cir. 1985) (addressing allegations of

---

[6] Both parties agree this is the appropriate standard.

12

harassment and abuse under 15 U.S.C. § 1692d and false or misleading representations under §§ 1692e(5) and (10)).  We see no need to adopt a different standard for analyzing the threshold issue of whether the FDCPA applies.  This standard also promotes the FDCPA's purpose of protecting all consumers, "the gullible as well as the shrewd," Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993), from "abusive debt collection practices," 15 U.S.C. § 1692(e).

The objective, least sophisticated consumer standard protects "naive consumers" with a minimal understanding of personal finance and debt collection. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam) (quotation marks omitted).  At the same time, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness."  Id. (quotation marks omitted).  We presume the least sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  Id. (quotation marks omitted).  We should not hold the least sophisticated consumer to the same standard as a reasonably prudent consumer.  See Jeter, 760 F.2d at 1172–75 (reversing a district court's use of a "reasonable consumer" standard in an FDCPA case).  The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," id. at 1172–73, "gullible," and of "below-average sophistication or intelligence," Clomon, 988 F.2d at 1318–19.  Whether the least

13

sophisticated consumer would think a name indicates a third party's involvement in collecting a debt will ordinarily present a jury question, though of course whether a plaintiff pleads enough facts to state a claim is a question of law for the court.  Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1307 n.11 (11th Cir. 2015).

While the least sophisticated consumer standard is a low bar, Mr. Pinson cannot meet it.  The least sophisticated consumer would not believe that Chase Home Finance was an unrelated third party attempting to collect on Mr. Pinson's mortgage with JPMorgan Chase.  Applying the least sophisticated consumer standard to Mr. Pinson's circumstances is an objective inquiry.  See Jeter, 760 F.2d at 1174–75 & n.6.  Standing in Mr. Pinson's shoes, even the least sophisticated consumer would understand that JPMorgan Chase and Chase Home Finance were related entities collecting his mortgage with JPMorgan Chase Bank.

Mr. Pinson took out a mortgage on his home with JPMorgan Chase Bank in 2005.  See Pinson v. JP Morgan Chase Bank, N.A., 646 F. App'x 812, 813–814 (11th Cir. 2016) (per curiam) (unpublished).[7]  In this factual context, each part of the name "Chase Home Finance" suggests its association with Mr. Pinson's

---

[7] Although neither party has alleged the circumstances of Mr. Pinson's mortgage, we may take judicial notice of factual circumstances from a previous case.  See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157, 89 S. Ct. 935, 942 (1969) (taking judicial notice of the record in prior, related litigation between the same parties for the purposes of identifying relevant circumstances).

creditor, JPMorgan Chase.  The word "Chase" in Chase Home Finance echoes the name of JPMorgan Chase, the holder of Mr. Pinson's mortgage.  The words "Home Finance" call up the fact that Mr. Pinson had financed his home with the mortgage from JPMorgan Chase.  Thus, even the least sophisticated consumer would connect Chase Home Finance with these "rudimentary" facts of his own mortgage with JPMorgan Chase.  Because he took out a home mortgage with JPMorgan Chase, Mr. Pinson's perception of Chase Home Finance as a third-party debt collector rises to the level of idiosyncratic.

Other courts have applied the false-name exception similarly.  See Thomas v. Commercial Recovery Sys., Inc., No. 8:07-cv-1104-T-23MAP, 2008 WL 11336625, at *3 (M.D. Fla. Sept. 19, 2008) (holding that the relationship between JPMorgan Chase and Chase Auto Finance is apparent from the names of the entities); Berk v. J.P. Morgan Chase Bank, N.A., No. 11-2715, 2011 WL 4467746, at *4 (E.D. Pa. Sept. 26, 2011) ("No reasonable person would find that 'Chase Auto Loans' is a false identification of . . . JPMorgan Chase Bank[.]");  see also Drew v. Rivera, No. 1:12-CV-9-MP-GRJ, 2012 WL 4088943, at *5 (N.D. Fla. Aug. 6, 2012) (stating that Citibank, South Dakota, N.A.'s use of the name "Citibusiness" in communications about credit card debt did not trigger the false-name exception, because it "could [not] possibly cause the least sophisticated consumer to have the false impression that a third party was collecting the debt");

15

<u>Simon v. Nat'l City Mortg. Co.</u>, No. 2:09-cv-376-FtM-29DNF, 2010 WL 1539970, at *5 (M.D. Fla. Apr. 19, 2010) (holding that even the least sophisticated consumer would know from the language on collection notices that National City Mortgage Company and National City Bank were affiliated corporations); <u>Burns v. Bank of Am.</u>, 655 F. Supp. 2d 240, 254 (S.D.N.Y. 2008) ("Even the least sophisticated consumer would be able to determine from cursory review of the correspondence from Bank of America Mortgage to Plaintiffs that Bank of America Mortgage is related to Bank of America." (alterations adopted and quotation marks omitted)), <u>aff'd</u>, 360 F. App'x 255 (2d Cir. 2010); <u>Young v. Lehigh Corp.</u>, No. 80 C 4376, 1989 WL 117960, at *22 (N.D. Ill. Sept. 28, 1989) (concluding that a debtor could not have been "duped into believing that Lehigh Corporation was not affiliated with Lehigh County Club, Inc.").

Mr. Pinson argues the least sophisticated consumer would be confused because the names "Chase Home Finance LLC" and "JPMorgan Chase Bank, N.A." indicate two different types of legal entities, a limited liability company and a bank. In Mr. Pinson's case, where the name "Chase Home Finance" on his credit report otherwise pointed to JPMorgan Chase Bank and his past-due home mortgage, the small discrepancy between "LLC" and "N.A." would not reasonably give Pinson the impression of a third-party debt collector.

Mr. Pinson presses us to establish a bright-line rule requiring creditors to use the same exact name throughout their relationships with debtors to avoid FDCPA liability. Likewise, JPMorgan Chase proposes a bright-line rule precluding liability under the false-name exception whenever a creditor uses another name that contains a part of the creditor's name. Both rules sweep too broadly. The perspective of the least sophisticated consumer arises from the totality of circumstances, and we cannot properly adopt a per se rule. For instance, there may well be cases in which a creditor's use of a name that contains part of its own name could cause confusion to the least sophisticated consumer. On this record, however, the unsophisticated consumer could not plausibly have been misled.

2.

Because we have concluded that Mr. Pinson cannot plausibly allege that the name Chase Home Finance would fool the unsophisticated consumer in his position, we need not address the third prong of the false-name exception. We therefore reserve for another day the question of whether reporting a debt to a consumer credit agency is part of "the process of collecting [one's] own debts." See 15 U.S.C. § 1692a(6).

Because the least sophisticated consumer would not believe Chase Home Finance was a third-party debt collector distinct from JPMorgan Chase, Mr. Pinson

17

has failed to state a claim that JPMorgan Chase violated the FDCPA. We affirm the District Court on this ground.

B.

Mr. Pinson's first FCRA claim is that JPMorgan Chase failed to investigate the accuracy of the information it provided to TransUnion. The FCRA requires consumer reporting agencies like TransUnion to notify a person who provided information—here, JPMorgan Chase—if a consumer disputes the information's accuracy. 15 U.S.C. § 1681i(a)(2)(A). On receiving notice, the person who provided the information is required to conduct an investigation into the information's accuracy. Id. § 1681s-2(b)(1)(A). A person who negligently fails to conduct the required investigation is liable for actual damages, id. § 1681o, and willful noncompliance gives rise to liability for actual damages, statutory damages of not less than $100, punitive damages, and attorney's fees, id. § 1681n. The Supreme Court has held that knowing or reckless disregard of the FCRA's requirements amounts to willful noncompliance. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 56–60, 127 S. Ct. 2201, 2208–10 (2007). A person acts in reckless disregard of the FCRA if he runs "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69, 127 S. Ct. at 2215.

18

Mr. Pinson alleges, and we think it plausible, that JPMorgan Chase willfully failed to comply with the FCRA's investigation requirement. Mr. Pinson says he disputed the allegedly false entry on his credit report with TransUnion at least three times, most recently in June 2014. Each time, TransUnion had a statutory duty to notify JPMorgan Chase of the dispute. 15 U.S.C. § 1681i(a)(2)(A). Yet Mr. Pinson alleges JPMorgan Chase "failed to conduct an investigation after receiving notice that [he] disputed the information [JPMorgan Chase] had provided to consumer reporting agencies" and "failed to review all relevant information provided by the consumer reporting agency pursuant to § 1681i." JPMorgan Chase's failure to investigate not once but three times plausibly indicates reckless disregard of the investigation requirement. These allegations cover the four necessary elements of the FCRA claim. Mr. Pinson alleges: (1) he disputed the accuracy of information on his credit report with a consumer credit agency; (2) JPMorgan Chase received notice of the dispute from TransUnion; (3) JPMorgan Chase failed to investigate; and (4) JPMorgan Chase recklessly disregarded its duty to investigate. Mr. Pinson has thus stated a claim that JPMorgan Chase willfully violated the FCRA by failing to investigate his dispute.

Not content with Mr. Pinson's allegations, JPMorgan Chase maintains Mr. Pinson did not allege JPMorgan Chase ever received notice of the dispute from TransUnion. That is not so. We have already recited the allegations that

JPMorgan Chase indeed received notice.  Add to that TransUnion's statutory duty to notify JPMorgan Chase of the dispute—a duty we will not assume TransUnion shirked—and we are satisfied Mr. Pinson adequately alleged notice.

JPMorgan Chase also argues Mr. Pinson did not adequately allege damages. It misses the mark with that argument, too.  Mr. Pinson plausibly alleged actual damages resulting from the failure to investigate.  As we set out in Part III, supra at 5–8, he says he suffered from mental anguish, lost credit opportunities, paid higher auto insurance premiums, and spent time and money trying to correct the falsehood on his credit report.  Mr. Pinson is entitled to compensation if he can prove his claims.

C.

Mr. Pinson's final claims allege that JPMorgan Chase violated the FCRA by unlawfully obtaining his credit report.  He contends this violated two separate FCRA provisions: one that prohibits obtaining a credit report for an improper purpose, and one that prohibits obtaining a credit report under false pretenses.  He has stated a plausible claim for each of these violations.

1.

The FCRA prohibits a person from using or obtaining a credit report for any purpose unless "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."  15 U.S.C.

20

§ 1681b(f)(1).[8] The FCRA narrowly circumscribes the purposes for which a person may obtain a credit report. See id. § 1681b(a)(3) (listing exhaustively all purposes for which a person may obtain a credit report). Among other purposes, a person may obtain a credit report to "use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Id. § 1681b(a)(3)(A).

Mr. Pinson alleges JPMorgan Chase obtained his credit report for use in litigation twenty times between May 10, 2013 and October 13, 2014. JPMorgan Chase was involved in litigation with Mr. Pinson beginning July 26, 2013. See Pinson v. JP Morgan Chase Bank, N.A., 646 F. App'x 812, 813 (11th Cir. 2016) (per curiam) (unpublished). It may violate the FCRA to obtain a consumer report for use in litigation. Litigation does not appear in the exhaustive list of purposes for which the FCRA authorizes a person to obtain a credit report. See 15 U.S.C. § 1681b; see also Bakker v. McKinnon, 152 F.3d 1007, 1012 (8th Cir. 1998)

---

[8] The statute also requires the "prospective user" of the report to certify the purpose for which the credit report is sought and to certify the report will be used for no other purpose. 15 U.S.C. § 1681b(f)(2) (requiring certification according to the procedure set out in 15 U.S.C. § 1681e(a)). JPMorgan Chase says Mr. Pinson's claim fails because he did not allege JPMorgan Chase violated the certification requirement. This argument is easily dispensed with. Most obviously, Mr. Pinson did allege that JPMorgan Chase "failed to certify as the user of the report the true purpose for which the information is sought." What's more, to comply with § 1681b(f), a person seeking a consumer report must both obtain it for a purpose authorized by the FCRA and certify the purpose according to § 1681e(a). Failing to do either will give rise to liability. A plaintiff need not allege both.

(rejecting the argument that the defendant, "an attorney representing clients in litigation, . . . had a business need to obtain credit reports on the opposing parties"); Duncan v. Handmaker, 149 F.3d 424, 427 (6th Cir. 1998) ("[T]rial preparation generally does not fall within the scope of § 1681b."). Given the timing, JPMorgan Chase might plausibly have obtained Mr. Pinson's credit report for use in litigation, at least for those credit reports obtained after July 26, 2013.

Mr. Pinson also adequately alleged a willful violation of the statute. Mr. Pinson alleges JPMorgan Chase obtained the report many times for use in litigation even though the statute, which sets out an exhaustive list of permissible purposes, nowhere authorizes the use of credit reports in litigation. These actions plausibly "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69, 127 S. Ct. at 2215. The statute plainly says a consumer reporting agency may "furnish a [credit report] under the following circumstances and no other." 15 U.S.C. § 1681b(a) (emphasis added). Even a careless reader would understand that the statute's list of permissible purposes is exhaustive.

JPMorgan Chase says it had a permissible purpose to obtain Mr. Pinson's credit report—namely, that Mr. Pinson had a past due account with JPMorgan Chase. It is true that the FCRA permits a person to obtain a credit report to review or collect a consumer's account. 15 U.S.C. § 1681b(a)(3)(A). And if JPMorgan

22

Chase in fact requested the consumer report for that purpose, it will not face FCRA liability.   But all we have at this stage in the litigation are the allegations of Mr. Pinson's complaint, which we must credit.  On remand, JPMorgan Chase may submit evidence explaining why it requested Mr. Pinson's credit report so many times.  It will prevail if the evidence it musters bears out its explanation.  Where Mr. Pinson has plausibly alleged that the report was obtained for use in litigation, however, we do not resolve these issues on a motion to dismiss.

2.

Separately, the FCRA makes it a crime to "knowingly and willfully obtain[] information on a consumer from a consumer reporting agency under false pretenses."  15 U.S.C. § 1681q.  This crime, contained in the same subchapter as the rest of the FCRA, is enforceable by the FCRA's private right of action.  Id. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."); id. § 1681o ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."); see Kennedy v. Border City Sav. & Loan Ass'n, 747 F.2d 367, 369 (6th Cir. 1984) (holding a civil cause of action exists under § 1681n to enforce § 1681q); Hansen v. Morgan, 582 F.2d 1214, 1221 (9th Cir. 1978) (same).

23

This circuit has never addressed the meaning of "false pretenses" in § 1681q of the FRCA. Consistent with every other court to address this issue, we now hold that intentionally obtaining a credit report under the guise of a permissible purpose while intending to use the report for an impermissible purpose can constitute false pretenses under § 1681q. Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction, 811 F.2d 1368, 1370 (6th Cir. 1987) (per curiam); Hansen, 582 F.2d at 1219–20; see also Veno v. AT&T Corp., 297 F. Supp. 2d 379, 385 (D. Mass. 2003). Negligent misrepresentation of the purpose will not suffice for liability under § 1681q; the offending party must intentionally misrepresent his purpose for obtaining the credit report.

Just as Mr. Pinson alleged enough to state a violation of § 1681b(f), he has alleged enough to state a violation of § 1681q. He alleges that JPMorgan Chase "knowingly and willfully made false representations to Experian to obtain information," "failed to disclose [its] true motivation in obtaining information . . . to Experian," and "knowingly and willfully obtained information . . . from Experian for use in litigation." Again, JPMorgan Chase may have obtained Mr. Pinson's credit reports for a perfectly proper purpose. Or it may have disclosed its true purpose to Experian, in which case it did not obtain the report under false pretenses. But this fact question cannot be resolved on a motion to dismiss.

24

## VI.

All a plaintiff must do to survive a motion to dismiss is state a plausible claim on which relief can be granted.  Not a surefire claim, not one likely to succeed.  A plausible claim, supported by enough factual allegations for a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Under this standard, the District Court erred in dismissing Mr. Pinson's FRCA claims, but it properly dismissed his FDCPA claim.  We **AFFIRM** dismissal of the FDCPA claim.  We **REVERSE** dismissal of the FRCA claims and **REMAND** for further proceedings consistent with this opinion.

25