[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10147

_____

JESSICA NELSON,
Individually and on behalf of Similarly
Situated Costumers,

                                        Plaintiff-Appellant,

*versus*

EXPERIAN INFORMATION SOLUTIONS INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:21-cv-00894-CLM

_____

Before NEWSOM, BRASHER, and WILSON, Circuit Judges.

BRASHER, Circuit Judge:

Jessica Nelson spent time and money to correct personal identifying information that she saw in the information section of her credit report, and she contends that Experian failed to correct that information in violation of the Fair Credit Reporting Act. Previously, we have recognized that the expenditure of "time," *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021), and "money," *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1207 (11th Cir. 2019), to correct a credit report is a concrete injury for the purposes of Article III standing. *See also Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). But, in each of those cases, the consumer reporting agencies published the error to third-party creditors. The question in this appeal is whether a plaintiff like Nelson has standing to sue a consumer reporting agency because it failed to correct information in her file that has not been published to a third party or otherwise affected her merely because she spent money and time asking the reporting agency to correct the information. We hold that spending money and time attempting to correct errors on a credit report that has not been published to a third party or otherwise affected a plaintiff fails to satisfy the standing requirements of Article III. Accordingly, we vacate the district court's judgment and remand for proceedings consistent with this opinion.

## I.

Nelson requested a copy of her credit report from Experian. She identified four errors in the informational section of the report: an incorrect spelling of her maiden name, an address to her mother's home, an address to her attorney's office, and a variation of her social security number.

Nelson sent a letter to Experian and requested that it correct her information. Experian wrote back and told her to contact the furnishers—whoever may have supplied Experian with her personal identifying information. Experian and third parties use information like names, addresses, and social security numbers to identify consumers and match them to accounts that they own. But, instead of notifying the furnishers, Nelson wrote to Experian a second time to correct the four entries. Experian responded with directions to contact her furnishers and corrected some entries. Experian did not tell Nelson about the corrections. So, again, Nelson wrote to Experian, asking Experian to correct all four pieces of inaccurate information. In total, Nelson spent about twenty dollars in certified mail costs in her communications with Experian.

Nelson sued Experian, in Alabama state court, under the Fair Credit Reporting Act for failure to conduct a reasonable reinvestigation into her information. Specifically, she alleged that Experian failed to "conduct a reasonable reinvestigation" once it was notified of inaccurate or incomplete information in her "consumer[] file." 15 U.S.C. § 1681i(a)(1)(A). Experian removed the case to federal court and requested judgment in its favor on the

pleadings. The district court raised standing *sua sponte* and requested supplemental briefing.

The district court denied Experian's motion for judgment on the pleadings and concluded that Nelson satisfied standing under this Court's decisions in *Pinson*, 942 F.3d at 1207, and *Pedro*, 868 F.3d at 1280. It reasoned that Nelson suffered an injury when she paid out-of-pocket expenses to send certified mail disputing the information to Experian and spent time attempting to correct that information. Later, the district court granted summary judgment in Experian's favor on the merits of Nelson's claim.

Nelson timely appealed. Like the district court, we raised Nelson's standing *sua sponte*, and the parties filed briefs on the issue.

## II.

We review the existence of Article III standing *de novo*. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020).

## III.

Article III of the Constitution limits our jurisdiction to "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. A plaintiff must prove that her dispute is a case or controversy by satisfying the standing requirements of Article III. To do so, the plaintiff must establish that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The question here turns on the injury-in-fact requirement. That injury must be "concrete"—meaning, "real." *Id.* at 340 (citation modified). It can be tangible or intangible. *Id.* Tangible harms include, among other things, "physical injury or financial loss." *Muransky*, 979 F.3d at 926. Intangible harms include, among other things, "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion v. Ramirez*, 594 U.S. 413, 425 (2021). In addition to being concrete, the injury must be "actual"—that is, not "conjectural or hypothetical." *Muransky*, 979 F.3d at 925.

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The allegations and evidence required to meet that burden depend on the stage of litigation. *Id.* At summary judgment, where we are now, the party must support its argument for jurisdiction with affidavits or evidence, which we accept as true. *Id.*

Nelson proposed two theories for how she has suffered an injury in fact: first, she says that she spent time and money to correct information on her credit report; and second, she alleges that the incorrect information increases her risk of identity theft. Neither theory, as we discuss in turn, satisfies the standing requirements of Article III.

### A.

We start with Nelson's first theory. Nelson contends that, because she spent time and money to correct errors in her consumer credit file, she satisfies Article III's standing requirements.

But Nelson cannot rely on a self-imposed injury to satisfy Article III. And Nelson has not identified any way that these errors injured her apart from her efforts to correct them. Notably, Nelson does not allege that this information was ever disclosed to a third party. Because Nelson has not established that the underlying information caused her harm, we cannot say that she has shown standing.

Our conclusion is a straightforward application of established precedents. Nelson alleges a violation of 15 U.S.C. § 1681i, which requires, among other things, that a consumer reporting agency reinvestigate whether disputed information is inaccurate. But a statutory violation is not itself an injury in fact. *See TransUnion*, 594 U.S. at 426; *Spokeo*, 578 U.S. at 341. Instead, a plaintiff must establish a concrete harm resulting from the statutory violation. *See TransUnion*, 594 U.S. at 426–27. For example, in *TransUnion*, the Supreme Court held that the improper designation of the plaintiffs on a sanctions list in the consumer reporting agency's internal files, allegedly in violation of the Fair Credit Reporting Act, did not by itself confer standing. *Id.* at 433. Without something more than a bare statutory violation—something like the disclosure of erroneous information to a third party—Nelson cannot establish standing.

Even though Nelson does not argue that her information was disclosed to a third party, Nelson contends that she was injured because she spent time and money to notify Experian of her incorrect personal identifying information. Again, this argument fails

under a straightforward application of precedent, which has recognized that "not all inaccuracies cause harm or present any material risk of harm." *Spokeo*, 578 U.S. at 342. Accepting Nelson's argument would create a loophole in *Spokeo* and *TransUnion*. Any plaintiff could bypass those holdings by spending time and money to rectify an otherwise harmless statutory violation. And, as we see it, the Supreme Court has already closed the door to that loophole: it has held that a plaintiff cannot "manufacture standing by incurring costs in anticipation of non-imminent harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013). That is, "an enterprising plaintiff" cannot "secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.* at 416.

We also rejected a similar self-inflicted harm argument in our en banc decision in *Muransky*. There, a plaintiff argued, among other things, that he suffered an actual injury because he spent time attempting to correct a statutory violation—too many credit-card digits printed on the back of a receipt. *See Muransky*, 979 F.3d at 922, 931. Because the statutory violation was not itself an injury for standing purposes, we reasoned that "any assertion of wasted time and effort necessarily rises or falls along with . . . whether the risk posed by . . . [the statutory] violation, as pleaded by [the plaintiff], is itself a concrete harm." *Id.* at 931; *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1345 (11th Cir. 2021) (a plaintiff "cannot conjure standing here by inflicting injuries on himself to avoid an insubstantial, non-imminent risk" of harm); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1263 (11th Cir.

2021) ("[B]ecause the risk of harm here is a sufficient injury, the allegations of mitigation injuries made by these Plaintiffs are also sufficient.").

Under these precedents, whether a plaintiff's "assertion of wasted time and effort" is a concrete harm depends on whether the wasted time and effort responded to something that "is itself a concrete harm." *Muransky*, 979 F.3d at 931. To be sure, Nelson argues that she had to spend time and money to "force" Experian to abide by its legal duties. But this argument merely begs the question. A plaintiff's efforts to "force" a defendant to do something—here, correct information in its file—does not establish standing unless the defendant's failure to act has caused or is likely to cause an injury. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."). No matter how Nelson packages her reasons for spending time and money, the bottom line is the same: a plaintiff cannot manufacture standing by spending time and money to rectify an otherwise harmless statutory violation.

Nelson disagrees with this reading of our precedents. She argues that we have found standing in similar cases based on the expenditure of money and wasted time to correct an otherwise harmless statutory violation. Specifically, she cites our opinions in *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023), *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021), *Pinson v. JPMorgan Chase*

*Bank*, N.A., 942 F.3d 1200 (11th Cir. 2019), and *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017). We disagree with Nelson's reading of these precedents.

As an initial matter, even if Nelson were correct that *Pinson* and *Pedro* held that self-inflicted harm is a concrete injury—and she is not, as detailed below—we have already explained that newer precedents from the Supreme Court and this court sitting en banc are inconsistent with that conclusion. *See TransUnion*, 594 U.S. at 426–27; *Muransky*, 979 F.3d at 931. Under the prior precedent rule, we are bound to follow a prior precedent "unless and until it is overruled by this court en banc or by the Supreme Court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). And we quite clearly rejected Nelson's argument in our decision in *Muransky*. So we must follow that intervening en banc decision. *See, e.g., Tsao*, 986 F.3d at 1345 (Jordan, J., concurring).

In any event, we also think Nelson misreads each of these precedents because, in each case, the consumer spent money and time to correct an error *that itself caused a concrete harm. See In re Hubbard*, 803 F.3d 1298, 1314 n.15 (11th Cir. 2015) ("We have an obligation to construe our prior decisions to be consistent with Supreme Court precedent where possible."). Most recently, in *Walters*, we held that a consumer had standing to sue because he "lost time [and] money," which are "garden-variety injuries in fact." 60 F.4th at 649. But we made clear that the consumer suffered these injuries because of a "disputed debt" that "negatively impacted his credit score." *Id.* at 646–47. In *Losch*, we held that a consumer could

sue a credit reporting agency that falsely reported a delinquent mortgage to third parties because "the false reporting itself was the injury." 995 F.3d at 943. Likewise, the consumer reporting agency in *Pinson* reported an erroneous past-due account to third parties who, in turn, used that information to make decisions adverse to the consumer's interests. 942 F.3d at 1207. And, in *Pedro*, a credit report contained an error that caused the consumer's credit score to plummet when it was published to third parties. 868 F.3d at 1280. In each case, we recognized that the consumers suffered *additional* harms because they had to spend money and time to dispute and correct these errors. But at no point did this Court hold that a consumer's effort to correct an otherwise harmless error in a consumer's credit file is, by itself, a concrete injury.

In short, Nelson's first theory of standing fails. We address below whether Experian's statutory violation led to an imminent risk of future injury. But, as to past injury, Nelson has not identified any way in which Experian's alleged statutory violation affected her apart from her voluntary efforts to remedy it. Nelson has not alleged that the information she sought to correct was disclosed to a third party. She has not alleged that it affected her credit. And she has not alleged an emotional or psychological injury.

Nelson's first theory depends on the mere existence of incorrect information in her consumer file. But information that merely exists in a credit file has no real-world effect unless it is distributed to another to view or use. The Supreme Court, though in dicta, has made this same point: the "presence of an inaccuracy in an internal

credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion*, 594 U.S. at 434. The consumers in *Walters*, *Losch*, *Pinson*, and *Pedro* suffered some real-world harm, which prompted them to spend money and waste time. But we cannot say the same about Nelson. She has not been "denied access to credit," *Pinson*, 942 F.3d at 1207, her credit score has not dropped, *Pedro*, 868 F.3d at 1280, and her incorrect identifying information has not been "sent to third parties," *Losch*, 995 F.3d at 943. Because the incorrect information in Nelson's credit file is not itself a concrete harm, the time and money she spent to correct that information is not a concrete harm either.

### B.

Nelson's second theory of standing also fails. She argues that, because the errors in her report created an "increased risk of identity theft" she suffered an injury in fact. After all, her second dispute letter to Experian expressed her "concern[] about identity theft," saying that she did not "want businesses thinking that the wrong addresses are [hers] and sending [her] information to the wrong addresses or the wrong name."

To satisfy standing based on a threat of harm, Nelson must show that the harm is "certainly impending" or that there is a "substantial risk" of the harm. *Clapper*, 568 U.S. at 414 & n.5. We have stressed that an allegation of a future injury triggers a "high standard for the risk-of-harm analysis, and a robust judicial role in assessing that risk." *Muransky*, 979 F.3d at 927. And to meet that high standard at the summary-judgment stage, a plaintiff must support

her theory of standing with evidence, which we accept as true. *See Lujan*, 504 U.S. at 561.

Nelson cannot meet this test because her theory relies on a "speculative chain of possibilities." *Clapper*, 568 U.S. at 414. She suggests that Experian will send her incorrect information to a third party, who, in turn, will send a credit offer to one of her two incorrect addresses—that is, her mother's or attorney's addresses. From there, a bad actor will obtain her information to steal her identity. Her theory about unknown bad actors stealing credit offers from her mother or attorney does not "demonstrate a sufficient likelihood" of identity theft to rise to the level of a concrete harm. *TransUnion*, 594 U.S. at 438. We cannot say that such a speculative series of events is "certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation modified).

Nelson resists this conclusion by arguing that we should defer to Congress's judgment that inaccuracies on credit reports can lead to identity theft. This argument falls short, too. True, the Fair Credit Reporting Act protects against identity theft, among other things. But to rely on anticipated future harm for the purposes of standing, a plaintiff must still establish that the harm is actual or imminent. *See Muransky*, 979 F.3d at 928 n.3 ("Both identity theft and a *material risk* of identity theft plainly qualify as injuries . . . .") (emphasis added). Though Congress's judgment informs us that identity theft is a concrete harm, *Spokeo*, 578 U.S. at 341, we cannot say that Nelson's chain-of-events reasoning moves the needle from a "hypothetical future harm" to a "certainly impending" harm of

identity theft. *Clapper*, 568 U.S. at 416. So this theory also fails to satisfy the requirements of Article III.

★    ★    ★

Because Nelson does not have standing, we must vacate the district court's summary judgment. Nelson says we should also award her attorney's fees and costs because, as she sees it, Experian employed a bait-and-switch tactic: Experian removed the case to federal court and now successfully argues that the federal courts lack jurisdiction. Experian, on the other hand, asks us to reject Nelson's fee arguments and send the case back to state court where it started. We leave these issues to the district court to address in the first instance.

## IV.

We **VACATE** and **REMAND** for proceedings consistent with this opinion.